UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| GSV FUTURES LLC, | Case No. 22-cv-05449-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO SERVE DEFENDANT BY ALTERNATIVE MEANS** |
| CASMAIN L.P., | Re: ECF No. 8 |
| Defendant. | |

### INTRODUCTION

The plaintiff, GSV Futures LLC — an entity formerly known as "Step GSV Future LLC" — sued the defendant, Casmain L.P., for partnership distributions and related claims.[1] Because the plaintiff did not serve the defendant successfully, it asks to serve the defendant by email and WeChat.[2] The court can decide the motion without oral argument under Civil Local Rule 7-1(b). The court authorizes the plaintiff to serve the summons, the complaint, and this order on the defendant by email and WeChat, because these alternative means are reasonably calculated to give notice and are not prohibited by international agreement.

---

[1] Compl. – ECF No. 1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] WeChat is a messaging, social-media, and mobile-payment app. *U.S. WeChat Users All. v. Trump*, 488 F. Supp. 3d 912, 916 (N.D. Cal. 2020).

ORDER – No. 22-cv-05449-LB

## STATEMENT

The plaintiff GSV Futures was solely incorporated in July 2018 to enable its two Class-A members, Huge Way Trading and Logistic Limited (Huge Way) and Jiongwei Yang, to make cryptocurrency investments through a partnership with the defendant Casmain.[3] The defendant is a China-based, Cayman-Island business entity.[4] Chuang Liu (aka "Simon Liu") — a Chinese native who claimed significant cryptocurrency investment expertise — was the plaintiff's manager.[5]

The plaintiff alleges that, in August 2018, Liu changed the plaintiff's business name from Step GSV Future LLC to GSV Futures LLC and set up a new bank account in the name of GSV Futures LLC without informing the other members of the plaintiff.[6] A few months later, in October 2018, Liu requested that the defendant replace the plaintiff's banking details with information associated with the new bank account.[7] Between 2018 and 2021, the plaintiff alleges that the $3 million that its members contributed to the LLC was used for cryptocurrency investment by the defendant.[8] During this time, Liu allegedly misrepresented to third parties that the funds were actually his.[9]

In February 2022, Liu allegedly sought to take control of the plaintiff's funds just before the $3 million in principal (along with any profits) were due to be paid back to the plaintiff's members.[10] In March 2022, members of the plaintiff removed Liu as the plaintiff's manager and changed the plaintiff to a member-managed LLC.[11] Liu refused to provide records to the plaintiff's

---

[3] Compl. – ECF 1 at 2 (¶ 7).

[4] Zou Decl. – ECF No. 8-1 at 2 (¶ 5).

[5] Compl. – ECF 1 at 3 (¶¶ 8–12).

[6] *Id.* at 4–5 (¶¶ 22–25).

[7] *Id.* at 5 (¶¶ 25–26).

[8] *Id.* at 5 (¶¶ 27–28).

[9] *Id.* at 5 (¶ 28).

[10] *Id.* at 6 (¶ 29).

[11] *Id.* at 6 (¶¶ 31–33).

members and, in April 2022, Liu provided new bank account information to the defendant and requested that it disburse all funds into that new account.[12]

After Liu's removal, the plaintiff requested capital contribution and partnership profits from the defendant.[13] The defendant still holds the funds.[14] The plaintiff speculates that the defendant may fear a lawsuit from Liu.[15]

The plaintiff sued Liu in California state court and he is purportedly avoiding service of the summons and complaint.[16] In this action, the plaintiff contends that the defendant is holding the $3,000,000 in capital contributions and profits and seeks (1) declaratory relief, (2) disbursement of the funds ($3,000,000 plus interest earned), and (3) an accounting of the funds the defendant is holding to which the plaintiff is entitled to receive.[17]

The physical address of Casmain is unknown to the plaintiff.[18] The plaintiff and the defendant have communicated through emails and WeChat messages.[19] The plaintiff has identified three contacts at Casmain: (1) Xiaoguang Jin, general manager of Casmain, email address "jinxg@casim.cn," WeChat nickname "Frank," (2) Xiaoli Zhang, in-house counsel of Casmain, email address "zhangxl@casim.cn," WeChat nickname "Xiaoli Zhang," and (3) Xun Ai, in-house counsel of Casmain, email address "aixun@casim.cn," WeChat nickname "Ai Xun."[20]

The defendant appears to have communicated through the above-identified email addresses and WeChat profiles. For example, on March 10, 2022 Xiaoguang Jin responded to the plaintiff's counsel regarding "claims" against the defendant and acknowledged "sorting out the relevant

---

[12] *Id*. at 7–8 (¶ 37, 44).

[13] *Id*. at 8 (¶¶ 46–47).

[14] *Id*. at 8 (¶ 46).

[15] *Id*. at 8 (¶ 47).

[16] *Id*. at 8 (¶ 45).

[17] *Id*. at 9–10 (¶¶ 49–57).

[18] Zou Decl. – ECF No. 8-1 at 2 (¶ 6).

[19] *Id*. at 2 (¶ 7).

[20] *Id*.

documents by the internal legal department of Casmain L.P."[21] Also on March 10, 2022 Xun Ai responded to the plaintiff's counsel by acknowledging receipt of a letter and other materials "sent to Casmain L.P." and then went on to provide a response.[22] On September 14, 2022, the general manager of the defendant, Xiaoguang Jin told Jiongwei Yang (current manager of the plaintiff) by WeChat that the defendant (Casmain) would not respond to or defend a lawsuit, but would "wait for the court's judgment."[23] On September 28, 2022, the plaintiff's counsel asked the defendant's in-house counsel to execute a waiver of service form for this lawsuit.[24] Apparently, the defendant has not responded.[25]

The plaintiff moved to serve the summons and complaint on the defendant by email and WeChat.[26]

**ANALYSIS**

Federal Rule of Civil Procedure 4(f) establishes three mechanisms for serving an individual in a foreign country: (1) by an internationally agreed means of service that is reasonably calculated to give notice, such as those provided by the Hague Convention, (2) if there is no international means or no means specified then by means reasonably calculated to give notice, or (3) by other means not prohibited by international agreement, as the court orders. *See* Fed. R. Civ. P. 4(f). Furthermore, "because Rule 4(h)(2) 'authorizes service of process on a foreign business entity in the manner prescribed by Rule 4(f) for individuals,' the procedures set forth in Rule 4(f) also apply to corporate litigants." *Microsoft Corp. v. Goldah.com Network Tech. Co.*, No. 17-cv-

---

[21] Zou Decl. – ECF No. 8-1 at 2 (¶¶ 9–10); Email Correspondence, Ex. A to Zou Decl. – ECF No. 8-1 at 5.

[22] Zou Decl. – ECF No. 8-1 at 2 (¶¶ 9–10); Email Correspondence, Ex. C to Zou Decl. – ECF No. 8-1 at 13.

[23] Zou Decl. – ECF No. 8-1 at 2–3 (¶ 11); WeChat Messages, Ex. H to Zou Decl. – ECF No. 8-1 at 28–34.

[24] Zou Decl. – ECF No. 8-1 at 3 (¶ 13); Email Correspondence, Ex. I to Zou Decl. – ECF No. 8-1 at 35–37.

[25] Zou Decl. – ECF No. 8-1 at 3 (¶ 13) ("[I]t is clear that Casmain does not want to cooperate with any filing.").

[26] Mot. – ECF No. 8.

ORDER – No. 22-cv-05449-LB            4

02896-LHK, 2017 WL 4536417, at *3 (N.D. Cal. Oct. 11, 2017) (citing *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002)).

Courts have applied Rule 4(f)(3) to allow court-directed service by any means that are (1) not prohibited by international agreement and (2) "comport with constitutional notions of due process" by providing notice "reasonably calculated, under all circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Props., Inc.*, 284 F.3d at 1014–16 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). "Service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.'" *Id.* at 1015 (cleaned up). Therefore, the advisory committee notes indicate that "alternate service of process under Rule 4(f)(3) [is available] without first attempting service by other means." *Id.*

Courts have authorized service by email and social media in similar cases. For example, in *Fabian v. LeMahieu*, the district court authorized service on a foreign defendant via email and social media. No. 19-cv-00054-YGR, 2020 WL 3402800, at *2 (N.D. Cal. June 19, 2020). The court held that service on the defendant's attorney was appropriate to prevent delays in litigation, and that the proposed alternative methods of service "mail, electronic mail, and social media" were not prohibited by international agreement. *Id.*

For example, courts have allowed service by email and social media where there was evidence that the parties being served regularly used those means to communicate. *St. Francis Assisi v. Kuwait Fin. House*, No. 3:16-cv-3240-LB, 2016 WL 5725002, at *2 (N.D. Cal. Sept. 30, 2016) (allowing service by Twitter and holding that service by Twitter was "reasonably calculated to give notice to" the defendant because the defendant "has an active Twitter account and continues to use it to communicate with his audience"); *UBS Fin. Servs. Inc. v. Berger*, No. C 13-03770 LB, 2014 WL 12643321, at *2 (N.D. Cal. Apr. 24, 2014) (recounting decision to allow service by email and LinkedIn "InMail" feature based on the party's previous use of the email address in an underlying arbitration proceeding). Furthermore, courts have held that service by email is reasonably calculated to provide notice where emails to the subject email addresses have not been returned as undeliverable. *Goes Int'l, AB v. Dodur Ltd.*, No. 14-CV-5666 LB, 2015 WL 1743393,

at *3 (N.D. Cal. Apr. 16, 2015) (the lack of any notification that test emails were not delivered "provides at least some minimal assurance that the email address is legitimate"); *D.Light Design, Inc. v. Boxin Solar Co.*, No. C-13-5988 EMC, 2015 WL 526835, at *3 (N.D. Cal. Feb. 6, 2015) (allowing service by email in part because "Plaintiffs' email . . . was delivered successfully and did not bounce back as undeliverable"); *F.T.C. v. Pecon Software Ltd.*, No. 12 CIV. 7186 PAE, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) ("Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant.").

But service under Rule 4(f)(3) is not warranted simply because it is faster than an alternative. *Nowak v. XAPO, Inc.*, No. 20-cv-03643-BLF, 2020 WL 5877576, at *3 (N.D. Cal. Oct. 2, 2020) (declining to allow service by email under Rule 4(f) based merely on claim that the defendant's "primary business address is a 'virtual office [that] gives remote business owners and employees a fixed workplace'" with "little evidence that [the defendant] does not actually operate its business or have any authorized agent to accept service of process at this location") (cleaned up); *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-cv-05784-VKD, 2019 WL 5550039, at *3 (N.D. Cal. Oct. 28, 2019) ("Generally, the fact that alternate service will be faster does not, by itself, justify service by alternate means.") (cleaned up). That said, the court in *Nowak* allowed the plaintiff to serve another defendant by email and social media under Rule 4(f) where "the process server had exhausted all reasonable efforts to personally serve [the defendant], which included asking other businesses at the address whether they recognized the name [of the defendant], looking for the business within the building directory, conducting an online search, and noting the business's online images appeared altered as to give a false impression that [the defendant] was at the listed address." 2020 WL 5877576 at *4.

Some courts in this district have questioned whether service by email is allowable under Rule 4(f)(3) when the foreign country where the party being served is located has objected to postal service under the Hague Convention. In *Agha v. Jacobs*, the court distinguished the holding in *Rio Props., Inc.*, 284 F.3d at 1014, and other similar cases on grounds that those cases "involve[d] foreign countries that either were not members of Hague Convention, or if they were, had not exercised their rights under Article 10 of that Convention to object to service through 'postal

channels.'" No. C 07 1800 RS, 2008 WL 2051061, at *1 (N.D. Cal. 2008). The court in *Agha* also declined to distinguish between email and "postal channels" for purposes of analyzing service under Rule 4(f)(3) and the Hague Convention. *Id* at 2.

But other courts in the district have allowed service by email even where the party being served is in a country that is a signatory to the Hague Convention and has objected to service by postal channels. For example, in *Williams-Sonoma Inc. v. Friendfinder Inc.*, the court allowed service by email where the plaintiff "presented evidence that physical addresses for a number of the named defendants [could not] be located or that defendants have refused to accept service." No. C06-06572 JSW, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007). In *Microsoft Corp. v. Goldah.com Network Tech. Co.*, the court allowed service by email based on the urgency associated with the risk that the subject funds would be transferred from the United States to China and thus make them unavailable to satisfy an award for the plaintiff. No. 17-CV-02896-LHK, 2017 WL 4536417, at *4 (N.D. Cal. Oct. 11, 2017). In fact the court in *D.Light Design, Inc.*, held that if "the physical addresses of [the] Defendants are unknown, the Hague Convention does not apply." 2015 WL 526835, at *2 (cleaned up).

Here, the plaintiff submitted evidence in the form of a declaration stating that neither the plaintiff nor the plaintiff's counsel know the defendant's physical address.[27] There is little to no evidence establishing that the plaintiff took steps to identify a physical address for the plaintiff and some of the email correspondence with the defendant include a physical address for "CAS Investment Management Co, Ltd.," which is different from but possibly related to the defendant.[28]

Nonetheless, the defendant's communications with the plaintiff and its apparent refusal to accept service militate in favor of allowing the plaintiff to serve the defendant by email and WeChat. For instance, representatives of the defendant have corresponded with the plaintiff by email and WeChat.[29] In these communications, the defendant's representatives have

---

[27] Zou Decl. – ECF No. 8-1 at 2 (¶ 6).

[28] Email Correspondence, Ex. A to Zou Decl. – ECF No. 8-1 at 5.

[29] Zou Decl. – ECF No. 8-1 at 2 (¶ 7).

acknowledged receipt of materials directed to the defendant and appear to have provided substantive responses — including stating that the defendant would not respond to or defend itself in this action — without disclaiming their relationship to the defendant.[30] Accordingly, service by email and WeChat is reasonably calculated to provide notice and is not prohibited by the Hague Convention.

## CONCLUSION

The court grants the plaintiff's motion to serve the defendant with the summons and complaint by email and WeChat. The plaintiff may effect service on the defendant by sending the summons and complaint to the defendant's three contacts (Xiaoguang Jin, Xiaoli Zhang, and Xun Ai) by email and WeChat.

**IT IS SO ORDERED.**

Dated: November 10, 2022

LAUREL BEELER
United States Magistrate Judge

---

[30] Zou Decl. – ECF No. 8-1 at 2 (¶¶ 9–10); Email Correspondence, Exs. A, C to Zou Decl. – ECF No. 8-1 at 5, 13; WeChat Messages, Ex. H to Zou Decl. – ECF No. 8-1 at 28–34.